IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ROBERT NENO, | * |
| Plaintiff, | * |
|  | * |
| v. | *   Civil Action No. RDB-14-03071 |
|  | * |
| AETNA LIFE INSURANCE COMPANY, | * |
|  | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Robert Neno ("Plaintiff" or "Neno") brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against Defendant Aetna Life Insurance Company ("Defendant" or "Aetna"), alleging that Defendant improperly denied his claim for long-term disability benefits under an employee welfare benefit plan maintained by his employer and issued by Aetna.  *See* Compl. at ¶ 18, ECF No. 1.  Currently pending before this Court are Plaintiff Robert Neno's Motion for Summary Judgment *or in the alternative Motion to Remand* (ECF No. 21), and Defendant Aetna Life Insurance Company's Motion for Summary Judgment (ECF No. 22).   The parties' submissions have been reviewed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, Plaintiff Robert Neno's Motion for Summary Judgment *or in the alternative Motion to Remand* (ECF No. 21) is DENIED, and Defendant Aetna Life Insurance Company's Motion for Summary Judgment (ECF No. 22) is GRANTED. Judgment is entered in favor of Aetna Life Insurance Company and against Robert Neno.

# BACKGROUND

## I.   The Employee Welfare Benefit Plan

On April 30, 2007, Plaintiff Robert Neno ("Plaintiff" or "Neno") was employed as a Senior Forensic Professional by Computer Sciences Corporation ("CSC").[1]  AR000425.[2]  As a CSC employee, he was covered by an employee welfare benefit plan issued by Defendant Aetna Life Insurance Company ("Defendant" or "Aetna"), providing both short-term and long-term disability benefits.  For the first twenty-four months of disability, a "disabled" employee is one who "cannot perform the material duties of [his] own occupation solely because of an illness [or] injury [and] his earnings are 80% or less of [his] adjusted predisability earnings."[3]  AR001674.  The plan defines "own occupation" as "[t]he occupation that you are routinely performing when your period of disability begins.  Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed . . . [f]or your specific employer . . . ."  AR001691.  The plan identifies Aetna as the "claims fiduciary for benefits provided under the Policy" and confers Aetna with "discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."  AR001695.

## II.   Neno's Short-Term Disability Benefits

On January 10, 2013, while employed by CSC and covered by their employee welfare benefit plan, Neno visited Karen Scott, PA, complaining of neck and hip pain.  AR000674-

---

[1] Neno is 59 years old.  He is presently a citizen of Alabama, but was employed by CSC in Maryland and was previously a citizen of Maryland.  Compl. at ¶ 4-5, ECF No. 1.

[2] All citations are to the Bates-numbered administrative record ("AR") as stipulated by the parties and filed in this Court on May 18, 2015 (ECF No. 20).

[3] The definitions of "disability" for short-term and long-term benefit claims are essentially identical under the plan.

676.  Neno reported "pain sorting out papers, sitting at a computer, and carrying a small stack of books," and claimed that he could not "stand for any length of time due to stabbing pain in the right hip."  *Id.*  Ms. Scott determined that he suffered from bursitis of the right hip, bulging cervical disc, cervicalgia, and cervical radiculopathy.  *Id.*  In an Attending Physician Statement dated the same day, Ms. Scott concluded that Neno had "no ability to work," was restricted from lifting over five pounds, and restricted from extended standing. AR000696-697.  Furthermore, in a Doctor's Work Certificate dated January 17, 2013, Ms. Scott indicated that Neno was "not able to work from 1/11/13 to 3/11/13."  AR000672.

Shortly thereafter, Neno filed a claim for short-term disability benefits under CSC's plan, alleging that "constant pain in neck [and] hip" and an inability to sit or stand for long periods prevented him from completing his job duties.  *Id.*  AR000692.  He was approved for benefits from January 14, 2013 through February 17, 2013 and was notified of his approval by a letter dated January 23, 2013, in which Aetna emphasized its expectation that he would return to work on February 18, 2013.  AR000051, AR000197.  Aetna stated that no further benefits would be approved "unless we receive and review additional medical information that supports your entitlement to continued benefits.  It is your responsibility to provide additional updated medical information to support [continued] absence."  *Id.*

Over the following weeks, Neno submitted additional medical information to Aetna, including a February 15, 2013 letter from Steven L. Silverston, Neno's chiropractor. AR000682.  Dr. Silverston stated that, although Neno had made "intermittent progress toward recovery," his "current condition is easily exacerbated."  *Id.*  He "expect[ed] a partial recovery of [Neno's] functional deficits," but "expect[ed] the case to possibly extend longer

than usual due to a slower than usual recovery period to get to [maximum medical improvement]." *Id.* Physical therapy notes from that month indicated that Neno "was making good progress toward his goals with . . . reduction of pain and fatigue allowing him to begin walking at the mall and performing some house care activities," but that he "returned from vacation with increased pain . . . in the cervical region." AR000684-685.

On February 25, 2013, Neno was examined by Dr. Michael Wallace, an orthopedist. AR000644-645. Although Neno complained of tenderness and pain, Dr. Wallace observed "normal range of motion of the knee, ankle, and toes," and "normal sensation to light touch throughout the right lower extremity." *Id.* An X-ray showed "no major degenerative changes," "no major bony abnormalities," and showed "normal AP pelvis and normal right hip." *Id.* An MRI of Neno's hip was largely "normal," but showed some abnormalities, suggesting "gluteus medius and minimus tendinitis and trochanteric bursitis." AR000646.

On March 7, 2013, Neno reported to Karen Scott that he continued to experience hip and neck pain and did not feel that he could return to work. AR000656-658. Upon speaking with her supervisor, Dr. William Tham, Ms. Scott concluded that Plaintiff was not able to work until a functional capacity evaluation ("FCE") was completed." *Id.* Neno underwent an FCE on April 19, 2013. AR000416.

In light of these developments, Aetna extended Neno's short-term disability benefits through March 11, 2013, through March 17, 2013, and again through April 7, 2013. AR000069, 81, 97. In each case, Aetna stated that Neno was expected to return to work unless he submitted additional medical information supporting an extension. AR000206, 211, 215. Aetna also stated that "further evaluation [was] necessary" and that Neno had "a

pending [surgery] . . . that would normally decrease his functionality . . ." *Id.*

Upon learning that Neno would in fact undergo hip surgery on April 30, 2013, Aetna again informed him that his short-term disability benefits were extended and would be further extended as needed for recovery.   AR000219.   On May 8, 2013, following his surgery, Neno saw Dr. Tham.   AR000570-573.   Based on Neno's FCE results, Dr. Tham concluded that "if the appropriate modifications regarding standing cannot be made – standing no more than 30 minutes at a time, and lifting no more than 20 [pounds] and modification of his work station where he doesn't have to look down with flexion of his neck, then he should be placed on long-term disability from his work."  *Id.*

Around this time, Neno's short-term disability benefits were again extended, this time to May 10, 2013.   AR000113.   Initially, they were extended to June 14, 2013 as well, with the possibility of further extension if Neno submitted additional medical information.  *Id.*   Aetna specifically requested Neno's FCE results and updated restrictions and limitations.  *Id.*

On May 21, 2013, Aetna received a Job Analysis Worksheet for plaintiff's position, completed by Charles Twardowski, a manager at CSC.   AR000425-426.   Mr. Twardowksi provided the following description of Neno's job:

> Most days any instructor may work in their cube or at the academy teaching or a combination of both.   While in their cube an instructor may sit for longer periods of time and work on a computer and computer equipment, while they are conducting research for material to be included in our classroom training. There may be very minor physical activity during this time.
>
> When an instructor needs to go to class and either teach or just go to the academy they may be expected to stand for longer periods of time and it may be necessary to get up from seating and go to individual students and assist them with problems.   Most times standing near the students to talk is sufficient and there may be times when an instructor may have to go either sit nearby the student or have them move while the instructor fixes a computer

issue or checks on connectivity issues at the computer under the student's
desk area.  There may be very minor physical activity during this time as well.
*Id.*

Mr. Twardowski further noted that Neno's job required "occasional" lifting and carrying of

one to ten pounds, but "seldom" more than this, and required an ability to sit up to five

hours per day, walk up to four hours per day, use the keyboard for two or more hours per

day, and use a mouse for two or more hours per day.  *Id.*  Shortly thereafter, Aetna also

received Neno's FCE results.  AR000416-419.  The FCE report indicated the following:

> Testing indicates that [Neno's] tolerance of functional activity is most
> consistent with . . . the LIGHT Work physical demand level . . . . Testing
> indicates that he would reasonably tolerate the occasional lifting of 25 lbs. to a
> height of 62". [Neno] was most tolerant of activity when allowed to alter his
> position and pace on a regular basis. Prolonged postures and repetitive
> movements were least tolerated. He demonstrated the tolerance to remain in
> sitting for a 45 minute continuous period prior to requiring a shift of position.
>
> He demonstrated tolerance to remain on his feet, alternating between
> activities, for 75 minutes prior to requiring a seated rest break. His tolerance
> of continuous walking exceeded the 1/2 mile parameters of this evaluation,
> but his pace was slightly diminished relative to adult normative data . . . .
> During the course of 4 hours of testing, movement patterns . . . remained
> smooth, controlled, and symmetrical without notable asymmetry or
> compensation. Workplace Tolerance: Observation of activity pacing,
> heart rate responses, the use of rest breaks, movement patterns, body mechanics,
> and muscular exertion indicates that [Neno] could safely sustain this level of
> activity on a full-time basis.  *Id.*

Additionally, the FCE results indicated that Neno needed to sit for "up to 50% of a

standard 8 hour workday."  *Id.*

After reviewing Dr. Tham's conclusions, Neno's Job Analysis Worksheet, and his

FCE Report, Aetna determined that Neno was no longer eligible for short-term disability

benefits.  Aetna informed him that his benefits would be denied beyond May 19, 2013,

rather than continuing through June 14th, 2013 as originally stated.  AR000143, 232.

Following Aetna's denial of his short-term benefits claim, Neno retained legal counsel and appealed the decision.  AR000535.  In support of his appeal, Neno submitted a Medical Assessment of Ability to do Work-Related Activities," dated June 25, 2013 and completed by Dr. Tham.  AR000377-381.  Dr. Tham concluded that Neno was capable of "light work," i.e. "lifting no more than 20 lbs. at a time with frequent lifting or carrying of objects weighing up to 10 lbs."  He found that Neno could stand and walk for 30 minutes at a time or less, for a total of four hours in an eight hour work day, that his ability to sit was unaffected, that he could "occasionally" (up to a third of an eight-hour day) climb, balance, stoop, bend, kneel, push, and pull, and that he had no manipulative limitations.  *Id.*

Additionally, Neno submitted an email dated May 30, 2013 from Christian Scott, a program manager at Neno's employer, making the following observations:

> Unfortunately, I don't think we can meet all of this [sic] exceptions -- especially for Mark's current role as an Instructor. I think we could avoid having Mark lift more than 20lbs, but the other two restrictions are more difficult to avoid. As a classroom instructor, Mark could possibly avoid standing for more than 30 minutes, but I believe that there is a high potential that it could affect his work performance. Most classes contractually require 2 Instructors per classroom: one to stand in front and present/demonstrate, and another to assist students with problems. The "assistant" instructor is often working on a computer, or otherwise kneeling/crouching to work with students, which would likely violate his neck flexion conditions.
>
> As an alternative to classroom instruction, we could have Mark deliver online courses, generate/maintain course material, and other such tasks. However, these roles all require extensive computer use (note that we are a cyber training academy), which I believe may be a problem with respect to Mark's neck flexion. Please note that I am not a medical professional, and I have no experience in the field; however, I do know that working on the computer for any significant amount of time was an issue for Mark while he was here, and I am concerned about worsening his condition. I am not aware of a workstation configuration that would be acceptable to effectively prevent neck flexion. AR000372.

Neno also submitted a letter dated September 3, 2013 from Martin Kranitz, a vocational consultant, who concluded that Neno "cannot do the work because the employer cannot make the necessary accommodations," and "according to Dr. Tham he cannot do the work without the accommodations." AR000528. Finally, Neno submitted a notice dated August 26, 2013, indicating that he had been awarded Social Security disability benefits beginning in July of 2013. AR000905-911.

To aid in its evaluation of Neno's appeal, Aetna recruited two independent doctors. First, on November 15, 2013, Dr. Michael Gerber, a board certified chiropractor, examined Neno's file. AR000296-300. After communicating with Neno's Chiropractor, Dr. Silverstone, Dr. Gerber concluded that "the medical records and documentation under review including the peer-to-peer teleconference/consultation, from a functional point of view, do not preclude the claimant from performing the core activities of his own sedentary physical demand occupation level." *Id.* Additionally, he noted, the "office notes with the chiropractor and medical doctors . . . show no significant functional deficits or pertinent objective findings that would preclude the claimant from working for the time period in question. Therefore, there is no continued functional impairment for this claimant from 5/30/13 through 7/21/13." *Id.* Dr. Gerber further concluded that, based on Dr. Tham's observations and the FCE, "the physical demand level of work that [Neno] can likely perform from 5/30/13 through 7/21/2013 is sedentary and light work." *Id.*

On November 26, 2013, Neno's records were reviewed by Dr. Priya Swamy, board certified in physical medicine and rehabilitation. AR000289-292. After speaking with Dr. Tham, and reviewing documentation related to Neno's surgery, Dr. Swamy concluded that

"[i]t would be expected that by 7/21/2013 [Neno] would have healed from this injury." *Id.* He further noted that Neno "likely would have had difficulty with walking with the recurrent Morton's neuroma. His neck and back pain should not worsen as a result of sedentary work." *Id.* Furthermore, he observed that Neno's "FCE supports lifting of 20-30 pounds which is a reasonable amount of pain in a person with multiple chronic complaints." *Id.*

In light of this evidence, especially Dr. Swamy's opinion that Neno would be expected to recover from his hip surgery by July 21, 2013, Aetna overturned its initial denial and reinstated Neno's short-term disability benefits through July 21, 2013. AR000174.[4] Consequently, because Neno had been awarded the maximum level of short-term disability benefits, his claim was transitioned to one for long-term disability benefits. AR000733.

III.   <u>Neno's Claim for Long-Term Disability Benefits</u>

In accordance with the employee welfare benefit plan's definition of "own occupation," Aetna assessed the functional requirements of Neno's occupation as it is normally performed in the national economy. AR001691. Aetna consulted the Dictionary of Occupational Titles ("D.O.T.") and determined that Neno's occupation as a Senior Forensic Professional most closely resembled the occupational description of Satellite-Instruction Facilitator, a sedentary occupation that did not require standing and which "would enable a person to switch posture as needed." AR000739, 741.

---

[4] Plaintiff alleges that the reports of Drs. Gerber and Swamy were not received and were not part of Aetna's record when his short-term disability benefits were extended. Mem. Supp. Pl.'s Mot. Summ. J. at p. 12, ECF No. 21-1. He cites a form completed after his benefits denial was overturned that states, "The peer review is not yet in the file." AR000178. However, Aetna's claim notes indicate that Dr. Gerber's report was received by Aetna on November 20, 2013 (AR000184), and Dr. Swamy's report was received by Aetna on November 27, 2013 (AR000185-186). Furthermore, Aetna's notes from the appeal process quote several passages from Dr. Swamy's report. AR000174; AR000291-292.

The D.O.T. described this occupation as "[m]onitor[ing] training programs transmitted by communication satellite from [an] institution of higher learning to [a] remote educational institution or facility," and including tasks such as "[a]ctivating audiovisual receiver and monitor[ing] classroom viewing of live or recorded courses transmitted by communication satellite," "[s]timulat[ing] classroom discussion immediately after [a] broadcast, following [a] standardized format," "[m]onitor[ing] live seminar transmittals from [an] institute of higher learning, elicit[ing] responses from classroom students, and consolidat[ing] and transmit[ting] students' questions by teletype or telephone to seminar participants for direct response via satellite," and distributing and collecting homework assignments. AR001367. Physically, the occupation requires lifting, carrying, pushing, and pulling 10 pounds occasionally, but mostly sitting, with standing or walking for "brief periods of time." AR0001368.

After reviewing the medical information in Neno's file and comparing his functionality to the demands of his "own occupation," Aetna reached a decision with respect to his appeal. On January 16, 2014, Aetna informed Neno that his long-term disability claim was denied because "the information provided [did] not support a functional impairment that would preclude [plaintiff] from performing the material duties of [his] own occupation as it is defined in the national economy." AR000825-828.

Neno appealed his long-term disability denial and submitted additional medical documents. Among them was a June 27, 2014 MRI of Neno's cervical spine. It showed a posterior disc bulge at C3-C4 with mild AP stenosis of 9.8 mm and mild to moderate left foraminal encroachment, and a posterior disc bulge at C5-C6 "with borderline AP diameter

1 cm and mild bilateral foraminal encroachment." AR001128.  The other cervical disc levels were normal. An MRI of Neno's right hip showed "[m]ild bilateral trochanteric bursitis," but "[n]o advanced degenerative change, traumatic injury or hip dysplasia."   AR001129. Additionally, medical records from the Hattiesburg Clinic indicated that Neno underwent bilateral carpal tunnel release surgery on September 11, 2013, and was doing well. AR001194-1356.  The report also noted that Neno experienced constant pain, decreased range of motion, ambulates with a limp, and was diagnosed with cervical spondylosis.  *Id.*

Neno also submitted treatment records from Laurel Pain Clinic from October 1, 2013 through November 27, 2013, detailing his evaluation by Dr. Vivek Barclay, an internal medicine doctor.  AR000984-997.  Although Neno had some pain in lateral rotation," Dr. Barclay noted that he had "no true radicular symptoms in the upper extremities."  *Id.* Additionally, Neno's head and neck showed "normal range of motion in lateral rotation, extension, and flexion.  No cervical paravertebral tenderness or spasm."  AR000991.  Dr. Barclay diagnosed Neno with cervicalgia, cervical disc displacement, cervical spondylosis, fairly significant cervical spondylitic facet pain with facet arthrosis and strain, chronic bursitis and left foot pain, chronic pain syndrome, and chronic opioid dependence for pain control. AR000991-92.  Furthermore, Dr. Elizabeth Mathison diagnosed Neno with chronic pain syndrome and cervical disc disease.  AR001000.  The reports indicated that Neno takes multiple pain medications.  AR000984-997.

Finally, Neno submitted reports from Mr. Kranitz in which Kranitz disagreed with Aetna's evaluation of Neno's occupation and indicated that CSC's "drug-free awareness notice" and Neno's use of prescription pain medication could "make it difficult" for Neno

to perform his job duties or to work with "any employer with a similar policy."  AR001358, AR001381.  Mr. Kranitz concluded that Neno's job was closer to a "training instructor," a light duty occupation under the D.O.T., and that CSC's ability to accommodate Neno's restrictions, the Social Security disability determination, and Neno's pain medications, would render him unable to perform his own occupation.  *Id.*

On July 24, 2014, Dr. Mark Mendelssohn, an independent board-certified orthopedic surgeon, reviewed Neno's file.  AR000881-886.  He conducted a detailed review of Neno's medical history, and was able to speak with "Wendy," Dr. Wallace's assistant.  He concluded that "although [Neno] has multiple problems, including repeated surgery for Morton's neuroma, neck pain, and back pain for which he has had multiple neurosurgical and orthopedic consultations and was deemed not to be a surgical candidate, he has had extensive pharmacological management, but continues to have subjective complaints.  Most recently, he has had bilateral carpal tunnel release without evidence of any functional deficits.  Medical documentation does not substantiate a functional impairment, if any, from 1/14/13 through 7/18/14."  *Id.*

After reviewing Neno's file, Aetna informed Neno that his denial of long-term disability benefits had been upheld on appeal.  AR000843.  Aetna stated that it was "unable to authorize [long-term disability] benefits, as the information in [Neno's] claim file [did] not support a functional impairment that would prevent him from working continuously during the elimination period and as of his [long-term disability] effective date of July 13, 2013."  *Id.*

Plaintiff Neno filed this lawsuit, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, ("ERISA").  Subsequently, Neno filed a

Motion for Summary Judgment *or in the alternative Motion to Remand* (ECF No. 21), and

Defendant Aetna filed a Motion for Summary Judgment (ECF No. 22).

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  Only disputed issues of material fact, as determined in reference to the

governing substantive law, will affect entry of summary judgment.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*  In a motion for summary judgment, this Court has "an affirmative obligation

. . . to prevent 'factually unsupported claims and defenses' from proceeding to trial."  *Felty v.*

*Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp. v. Catrett*,

477 U.S. 317, 323–24 (1986)).  In that context, a court is obligated to consider the facts and

all reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When both parties file motions for summary judgment, as here, the court applies the

same standards of review.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991);

*ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not

permitted to resolve issues of material facts on a motion for summary judgment—even

where . . . both parties have filed cross motions for summary judgment.")   (emphasis

omitted), *cert. denied*, 469 U.S. 1215 (1985).  The role of the court is to "rule on each party's

motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985).

## ANALYSIS

I.   Standard of Review Under ERISA

The standard of review under ERISA is affected by two initial determinations.  First, a Court must decide if the benefit plan grants the plan administrator discretion to determine benefit eligibility. *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002). If a Court finds that discretion was granted, the Court must then determine if the plan administrator faced a conflict of interest sufficient to reduce the deference normally afforded the administrator's decision.  *Id.* at 269.  From those two determinations, the Court establishes the appropriate standard of review to apply.

A.   Grant of Discretion to Plan Administrator

To grant discretion to a plan administrator, a benefit plan must do so explicitly and with clear language. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000).  No specific words or phrases are required to grant discretion.  *See Gallagher*, 305 F.3d at 268. Rather, "if the terms of a plan indicate a clear intention to delegate final authority to determine eligibility to the plan administrator, then this Court will recognize discretionary authority by implication." *Feder*, 228 F.3d at 522.

This Court addressed this precise question in *Stills v. GBMC Healthcare, Inc.*, 48 F. Supp. 2d 495 (D. Md. 1999).  In that case, Standard Insurance Company administered a short-term disability plan to the plaintiff's employer, GBMC Healthcare, Inc.  In reviewing

language essentially identical to that in the present case, this Court found that the "Allocation of Authority" section of the disability plan granted Standard Insurance Co. discretionary authority to determine benefits eligibility where it reserved: "full and exclusive authority . . . to interpret the Group Policy and resolve all questions arising in its administration, interpretation, and application," including "the right to determine . . . entitlement to benefits." *Id.* at 498; *see also Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir. 1996) (holding that a plan that grants authority to determine eligibility benefits confers discretion to the plan administrator).

In the present case, the employee welfare benefit plan is governed by language largely identical to that in *Stills*. Plaintiff's plan provides that Aetna has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." AR001695. Accordingly, as articulated in *Stills* and as recognized by both parties in this case, the plan reserves discretion in Defendant Aetna, the plan administrator, over determination of disability benefits.

When a benefit plan reserves administrative discretion, an administrator's decision to grant or deny a claim is reviewed under an abuse of discretion standard. *See Stills*, 48 F. Supp. 2d at 498; *Johannssen v. District No. 1–Pacific Coast District*, 292 F.3d 159, 168 (4th Cir. 2002); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *see also Doe v. Group Hosp.*, 3 F.3d 80, 85 (4th Cir. 1993); *Crosby v. Crosby*, 986 F.2d 79, 83 (4th Cir. 1993). Under a deferential standard, a Court will uphold the administrator's decision if it is reasonable, whether or not the Court may have reached a different conclusion. *See Feder*, 228 F.3d at 522; *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). A decision is reasonable

where it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis*, 126 F.3d at 232 (citing *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995))).

      B.    <u>Effect of Conflict of Interest</u>

      In this case, Aetna is both the plan administrator and the insurer responsible for paying Neno's long-term disability benefits. *See Bernstein*, 70 F.3d at 788 (An administrator faces a conflict of interest where a decision to grant or deny benefits impacts the insurer's financial interests as it "both administers the plan and pays for benefits received by its members."). When a plan administrator is delegated discretion, a conflict of interest in claim determination may reduce the deference a Court shows to the administrator's decisions. *Gallagher*, 305 F.3d at 269 (citing *Ellis*, 126 F.3d at 233). Where a Court determines a conflict exists, the abuse of discretion standard is reduced "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Ellis*, 126 F.3d at 233. Deference is reduced on a sliding scale—where the incentive to benefit the insurer over the beneficiary is greater, "the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.* Accordingly, while this Court reviews Aetna's administrative decision to deny benefits under an abuse of discretion standard, the reasonableness of Aetna's decision and the weight of the evidence supporting that decision must be somewhat greater than under a simple abuse of discretion analysis. *See Booth v. Wal–Mart Stores, Inc. Assoc. Health and Welfare Plan*, 201 F.3d 335, 344 (4th Cir. 2000).

II.    Aetna's Denial of Neno's Long-Term Disability Benefits was Reasonable

In reviewing Neno's claim for long-term disability benefits, Aetna assessed the "material duties" of his "own occupation" in the national economy, pursuant to the terms of the employee welfare benefit plan, then compared those duties to Neno's demonstrated functionality.   Ultimately, Aetna concluded, after an exhaustive review of Neno's medical file, that there was insufficient evidence establishing "disability" under the terms of the plan. This decision was reasonable and supported by substantial evidence.   Aetna's process of review was deliberate and principled, and Neno was promptly notified of its determination.

A.    Aetna Reasonably Defined the Material Duties of Neno's Own Occupation

Under the terms of CSC's employee welfare benefit plan, a claimant is "disabled" if he "cannot perform the material duties of [his] own occupation . . ."  AR001674.  Aetna began its investigation of Neno's claim for long-term disability benefits by defining the "material duties" of his "own occupation."

The plan defines "own occupation" as "[t]he occupation that you are routinely performing when your period of disability begins.  Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed . . . [f]or your specific employer . . . ."  AR001691.  The United States Court of Appeals for the Fourth Circuit has found that it is reasonable for an insurer to consider the D.O.T. descriptions in order to define an applicant's occupation and job duties.  *See Gallagher*, 305 F.3d at 270–73; *see also Dionida v. Reliance Standard Life Ins. Co.*, 50 F. Supp. 2d 934, 939 n. 4 (N.D. Cal. 1999) (stating that "the D.O.T. is widely and routinely used to define 'occupation' in the U.S. economy . . . Given the amount of research and analysis that has gone into grouping similar

jobs and defining the occupational titles, and the length of time the D.O.T. has been widely used, it is reasonable for plan administrators, and courts, to use . . .").

In accordance with the plan's definitions, and Fourth Circuit precedent, Aetna searched the D.O.T. for a national job title analogous to Plaintiff's title of Senior Forensic Professional.   Aetna determined that Neno's position most closely matched that of a Satellite-Instruction Facilitator.   In making this determination, Aetna compared CSC's Job Analysis Worksheet for Neno's position, completed by Charles Twardowski, to the D.O.T. description of Satellite-Instruction Facilitator.   CSC indicated that Neno's position was a computer training job, requiring "very minor physical activity" ranging from sitting at a computer to working with students in a training classroom.   AR000425-426. "Occasional[ly]," the job requires lifting and carrying 1-10 pounds, and "seldom[ly]" anything more strenuous.   *Id.*   According to the D.O.T., a Satellite-Instruction Facilitator similarly monitors training programs, stimulates classroom discussion following instructional broadcasts, transmits student questions, and distributes and collects homework assignments. The position is sedentary, requiring lifting, carrying, pushing, and pulling 10 pounds "occasionally," but mostly sitting, with standing or walking for "brief periods of time."

Plaintiff objects to Aetna's conclusion that his position is most analogous to the D.O.T. position of Satellite Instructor Facilitator.   On the contrary, Martin Kranitz, his occupational consultant, has concluded that Neno's position most closely matches that of a Training Instructor, a "light duty" as opposed to "sedentary" occupation.   AR001358. However, the job duties of a Training Instructor seem to exceed those of Plaintiff's own position.   They include "confer[ring] with management to gain knowledge of work

situation," knowledge of "such methods as individual training, group instruction, lectures, demonstrations, conferences, meetings, and workshops," and testing trainees.   AR001364. Furthermore, Ms. Scott stated that Neno could "deliver online courses, generate/maintain course material, and other such tasks," suggesting that his position is more "sedentary" than "light duty."[5]   In light of the evidence in the administrative record, it was reasonable for Aetna to conclude that Neno's job duties were closer to those of a Satellite-Instruction Facilitator than a Training Instructor.

      B.    <u>Aetna Reasonably Determined that Neno Could Perform his Material Duties</u>

To qualify for long-term disability benefits, Neno was required to submit satisfactory proof that he was unable to perform the "material duties" of his "own occupation." *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 603 (4th Cir. 1999) (noting that the burden of proving a disability is placed on the employee).   As Neno's "own occupation" was determined to be sedentary as found in the general economy, Neno was required to present medical evidence indicating that he was unable to perform the requirements of a sedentary occupation.   In conducting its review of Neno's claim for long-term disability benefits, Aetna reviewed the results of Neno's FCE, the assessment of his treating physician, Dr. Tham, and reviews of Neno's medical records by three independent board-certified doctors.[6]   Following its review, Aetna determined that Neno was not disabled.   The evidence in the record demonstrates

---

[5] Even if Aetna had defined Neno's "own occupation" as the "light duty" position of Training Instructor, evidence in the record supports a finding that he could complete the "material duties" of that position.   In fact, Neno demonstrated the physical capacity to perform "light duty work" on the FCE.   Additionally, even after Neno's hip surgery, Dr. Tham concluded that he was capable of "light physical demand work." AR000569-573.

[6] While these documents provide the most compelling evidence in support of Aetna's denial of long-term disability benefits, they were not the only sources considered by Aetna in its review.   In its August 6, 2014 letter to Plaintiff, Aetna explains that "every piece of information was taken into consideration in our review," but that "[n]ot every document will be specifically referenced in this letter."   AR000842.

that this decision was reasonable, based on substantial evidence, and was therefore not an abuse of discretion.

Neno's FCE[7] report indicated that he could tolerate "sitting for a 45 minute continuous period prior to requiring a shift of position. He demonstrated tolerance to remain on his feet, alternating between activities, for 75 minutes prior to requiring a seated rest break. His tolerance of continuous walking exceeded the 1/2 mile parameters of this evaluation." AR000416-419. Additionally, Dr. Tham concluded that Neno was capable of "light work," i.e. "lifting no more than 20 lbs. at a time with frequent lifting or carrying of objects weighing up to 10 lbs." He found that Neno could stand and walk for 30 minutes at a time or less, for a total of four hours in an eight hour work day, that his ability to sit was unaffected, that he could "occasionally" (up to a third of an eight-hour day) climb, balance, stoop, bend, kneel, push, and pull, and that he had no manipulative limitations.

Furthermore, Dr. Gerber concluded that "the medical records and documentation under review . . . do not preclude the claimant from performing the core activities of his own sedentary physical demand occupation level." Additionally, he noted, the "office notes with the chiropractor and medical doctors . . . show no significant functional deficits or pertinent objective findings that would preclude the claimant from working for the time period in question. Therefore, there is no continued functional impairment for this claimant from

---

[7] Plaintiff claims that, because his FCE was conducted while Aetna was paying his short-term disability benefits, Aetna's reliance on the FCE to deny his claim for long-term benefits is inconsistent. Pl.'s Reply Mem. at p. 3, ECF No. 23. However, Aetna did not receive the results of Plaintiff's FCE until May 28, 2013. After that time, based on the results of the FCE, Aetna terminated Plaintiff's benefits. Then, following Dr. Swamy's conclusion that Plaintiff would recover from surgery by July 21, 2013, Aetna reinstated Plaintiff's benefits through that date. Accordingly, Aetna's use of the FCE has not been inconsistent. Additionally, Plaintiff notes that his FCE was performed prior to his hip surgery. However, even after the surgery, Dr. Tham concluded that he was capable of "light physical demand work." AR000569-573.

5/30/13 through 7/21/13." Dr. Gerber further concluded that, based on Dr. Tham's observations and the FCE, "the physical demand level of work that [Neno] can likely perform from 5/30/13 through 7/21/2013 is sedentary and light work." Dr. Swamy concluded that "[i]t would be expected that by 7/21/2013 [Neno] would have healed from this injury." While Dr. Swamy noted that Neno may have difficulty walking with his recurrent Morton's neuroma, he concluded that Neno's "neck and back pain should not worsen as a result of sedentary work."

While it is true that Plaintiff underwent carpal tunnel release surgery on September 11, 2013, following the reviews of Drs. Swamy and Gerber, records from the Hattiesburg Clinic indicated that he was doing well. Additionally, Dr. Barclay, a physician who examined Neno at the Laurel Pain Clinic, observed "normal range of motion" in Neno's head and neck. Finally, Dr. Mendelssohn did not find any evidence in Neno's medical file substantiating functional impairment through July of 2014.

Plaintiff contends that Aetna disregarded evidence of his worsening condition and use of pain medication in its review. Mem. Supp. Mot. Summ. J. at p. 19, ECF No. 21-1. However, Aetna specifically asked Dr. Gerber and Dr. Swamy to assess whether Neno's medical records contained evidence of functional impairment. AR000292; AR000299. Neither doctor discovered any such evidence. As mentioned above, Dr. Mendelssohn reached the same conclusion, even after reviewing Mr. Kranitz's materials and the Laurel Pain Clinic records mentioning Neno's use of medication. AR000882, AR000884-886. Plaintiff has identified no medical opinion in the administrative record concluding that he is cognitively impaired due to his medication. Furthermore, there is no indication in the

administrative record that CSC refused to allow Neno to continue working while taking pain medication, much less that this prohibition would apply to Plaintiff's "own occupation" in the national economy.[8]

In sum, the medical evidence available does not suggest that Aetna abused its discretion by determining that Neno is able to perform the "material duties" of his "own occupation" as defined under the employee welfare benefit plan. Aetna's decision was supported by substantial evidence and was made with deliberate and principled reasoning, as it reviewed Neno's medical records and sought opinions from independent sources. Therefore, based on the undisputed facts in the record, Aetna did not abuse its discretion in denying Plaintiff's claim for long-term disability benefits.

III.     Aetna Did Not Abuse Its Discretion By Extending Neno's Short-Term Disability Benefits, But Subsequently Denying His Request for Long-Term Benefits

Plaintiff contends that Aetna's approval of his claim for short-term benefits through July 21, 2013, the maximum duration of such benefits, but subsequent denial of long-term benefits under a nearly identical definition of "disability" suggests abuse of discretion. However, the record indicates that Aetna only extended Neno's short-term disability benefits to July of 2013 after he underwent hip surgery in April of 2013, and after Dr. Swamy concluded that he would recover from that surgery by July of 2013.  At all other times, Aetna clearly expressed its intention that Neno would return to work, absent a showing that extended disability benefits were medically required.  As the Fourth Circuit has held, and Defendant correctly identifies, an initial award of benefits under a "functionally identical standard . . . does not mean that [a] subsequent termination of those benefits was

___

[8] As explained *supra*, this is the standard of "material duties" against which Plaintiff's functionality must be compared.

the result of unprincipled reasoning." *Hensley v. Int'l Bus. Machs. Corp.*, 123 F. App'x 534, 538 (4th Cir. 2004).   In this case, as in *Hensley*, after extending Neno's short-term disability benefits, Aetna conducted "further investigation and review." *Id.*   As outlined *supra*, that investigation included reviewing Neno's FCE results, reviewing the findings of his physician, Dr. Tham, and consulting multiple independent doctors.  "[T]he Fourth Circuit has held that no vested right to benefits accrues under an employee welfare benefits plan . . . so that the decision to grant benefits initially cannot create an obligation by which a plan fiduciary is estopped from later terminating benefits." *Id.* (quoting *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 855 (4th Cir. 1994)).  Consequently, Aetna did not abuse its discretion.

IV.   <u>Neno's Social Security Award Does Not Indicate That Aetna Abused Its Discretion</u>

Neno also argues that Aetna abused its discretion in denying his long-term disability benefits because he received a favorable determination, granting benefits, from the Social Security Administration.  Mem. Supp. Mot. Summ. J. at p. 4, ¶ 1, ECF No. 21-1.  However, Social Security determinations of disability are based on different standards than those under independent long-term disability plans like CSC's employee welfare benefit plan.  In *Gallagher v. Reliance*, the Fourth Circuit found Social Security evaluations inapposite as Reliance's plan defined disability differently than the Social Security Administration.  *See Gallagher*, 305 F.3d at 275. As the Social Security standard differed from the definition of disability under the plan, the court found "no obligation to weigh the agency's disability determination more favorably than other evidence." *Id.*   (citing *Elliott*, 190 F.3d at 607). Moreover, Social Security regulations provide that greater weight will be given to medical opinions from treating physicians. *See Black & Decker Disability Plan*, 538 U.S. 822, 829 (2003) (citing to CFR

§§ 404.1527(d)(2), 416. 927(d)(2) (2002)).  A preference for treating physicians' opinions is not found under ERISA; rather, the Supreme Court explicitly rejected that requirement for plans such as the one reviewed in this case.  *Id.* at 834.  A Social Security Administration determination does not support Neno's assertion that Aetna's denial was an abuse of discretion as "[t]here is no indication that the definition of [disability] under the plan in any way mirrors the relevant definition under the regulations of the [Social Security Administration]." *Elliott*, 190 F.3d at 607. Quite simply, the Social Security determination is not dispositive in this case. Aetna did not abuse its discretion in reaching a different decision.  Therefore, this Court will not disrupt its reasoned decision to deny Plaintiff's claim for long-term disability benefits.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Robert Neno's Motion for Summary Judgment *or in the alternative Motion to Remand* (ECF No. 21) is DENIED, and Defendant Aetna Life Insurance Company's Motion for Summary Judgment (ECF No. 22) is GRANTED. Judgment is entered in favor of Aetna Life Insurance Company and against Robert Neno.

A separate Order follows.

Dated: October 20th, 2015

_____/s/_____
                Richard D. Bennett
                United States District Judge